IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | 8:03CR566 |
| v. | ) | |
| SCOTT GOODMAN, | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |

Defendant Scott Goodman is before the court on remand from the Eighth Circuit Court of Appeals for resentencing in accordance with *United States v. Booker,* 543 U.S. 220 (2005). Filing No. 169. This sentencing memorandum supplements findings made on the record at sentencing hearings on August 4, 2006, October 6, 2006, and October 19, 2006.

I. BACKGROUND

A. 2004 Proceedings

Defendant Goodman and co-defendants Leslie Fisher and Randy Evans were charged in this case with conspiracy to manufacture methamphetamine, in violation of § 21 U.S.C. § 841(a)(1) and 846, and possession of pseudoephedrine, in violation of 21 U.S.C. § 841(c)(1). Filing No. 1, Indictment at 1. No drug quantity was charged in the Indictment. *Id.* Goodman was arrested with his then-girlfriend, Leslie Fisher, when she attempted to shoplift pseudoephedrine on November 12, 2003. Goodman entered a plea of guilty on June 24, 2004, the same day that the Supreme Court issued its opinion in *Blakely v. Washington,* 542 U.S. 296 (2004). There was no plea agreement involved. The court accepted his plea, but deferred sentencing pending review of a presentence

investigation report ("PSR") prepared by the United States Office of Probation ("the probation office").

The probation office prepared PSRs for all three defendants, calculating the defendants' sentencing ranges under the United States Sentencing Guidelines ("Guidelines"). *See* Filing Nos. 121, Leslie Fisher Second Revised PSR ("Fisher PSR") (sealed); 122, Scott Goodman PSR ("Goodman PSR") (sealed); & 107, Randy Evans Revised PSR ("Evans PSR") (sealed). In the PSRs, the probation office related the facts underlying the offense conduct based on the prosecutor's version of events. *See, e.g.*, Goodman PSR at 4-6. The drug quantity attributable to each defendant was also calculated based on the government's version of events. *See id.* at 6. The reported facts show that co-defendant Fisher stated that she was to be paid $100 for purchasing or stealing the pseudoephedrine. *Id.* at 5. The PSRs further relate that Goodman consented to a search of his vehicle and that 19 grams of pseudoephedrine and a weapon were found in his car. *Id.* at 5-6. Co-defendant Randy Evans was later arrested and told police and prosecutors that Goodman and Fisher supplied him with methamphetamine and had been observed in possession of methamphetamine cooking supplies. Evans also stated that he had obtained pseudoephedrine for both Fisher and Goodman in the past, and had observed Goodman with a gun. *Id.* at 6-7.

The calculations and recommendations in the PSRs were based on review of the police reports, investigative reports and telephone conversations with police investigators and prosecutors. *Id.* at 5. These reports and statements relied heavily on the statements

2

made by Randy Evans. None of the defendants submitted a defendant's version of events.[1] Fisher PSR at 6; Goodman PSR at 5; Evans PSR at 6.

Based on those facts, the probation office determined that Goodman should be held responsible for 76.2 grams of pseudoephedrine (converted as equivalent to 42.14 grams of actual methamphetamine), establishing a base offense level of 30.[2] Goodman PSR at 6, 8. It also found that the facts supported a two-level enhancement for possession of a dangerous weapon. *Id.* at 8. The probation office noted that the government would not move for a three-level reduction for acceptance of responsibility under U.S.S.G. § 3A1.1(b) and thus provided only a two-level reduction. *Id.* No role-in-the-offense adjustment, up or down, was recommended in the PSR. *Id.* at 7. Goodman had no prior convictions that were assessed criminal history points, thus his criminal history category was I. *Id.* at 11. Goodman's resulting sentencing range, at offense level 30, was 97 to 121 months.

The probation office determined that co-defendant Leslie Fisher should be also be held responsible for 42 grams of actual methamphetamine, with a base offense level of 30. After subtraction of three points for acceptance of responsibility under U.S.S.G. § 3E1.1, Fisher's total offense level was 27. Her prior convictions resulted in a criminal history category of III and her resulting sentencing range was 87-108 months.

---

[1]In this district, on advice of counsel, defendants rarely submit to interviews with, or provide information to, the probation office. This is because they risk incriminating themselves or losing the government's recommendation of an adjustment for acceptance of responsibility.

[2]The amount of pseudoephedrine was calculated as follows: 984 pseudoephedrine tablets (29.52 grams) in Fisher's and Scott Goodman's possession when they were arrested on November 12, 2003; 960 pseudoephedrine tablets (28.8 grams) in the possession of Randy Evans when he was arrested on December 8, 2003; and 600 pseudoephedrine tablets (18 grams) that Randy Evans admitted to obtaining on prior occasions for Goodman and Fisher. Fisher PSR at 6.

The probation office found co-defendant Randy Evans was responsible for 32 grams of actual methamphetamine, resulting in a base offense level of 28.  Evans PSR at 7.  A three-level adjustment for acceptance of responsibility was applied.  *Id.* at 8.  The probation office found, however, that the facts would not support a two-level reduction for a minor role in the offense.  *Id.* at 7.  Evans's resulting sentencing range, at offense level 25 and criminal history category III, was 70 to 87 months.  *Id.* at 18.  Evans entered into a plea agreement with the government under Fed. R. Crim. P. 11(c)(1)(C) that recommended a minor role adjustment and provided for an offense level of 26.  Filing No. 78, Randy Evans Plea Agreement ("Evans Plea Agr.") at 1 & 4.  Evans was sentenced to 42 months.  Filing No. 114, Judgment.  In the plea agreement the government also agreed to consider any cooperation provided by Evans in determining whether to file, at its discretion, a motion for further reduction of his sentence under either U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e).  Evans Plea Agr. at 3.

At the 2004 sentencing hearing, Goodman raised *Blakely* objections to the quantity determination and the weapon enhancement in the PSR and moved for a declaration that the Guidelines were unconstitutional.  Filing No. 146, Transcript of Guilty Plea and Sentencing Proceedings ("Sent. Hr'g Tr.") at 19-20; *see also* Filing Nos. 99 & 110.  Goodman also sought a reduction for a minor role in the offense.  Sent. Hr'g Tr. at 21.  The government opposed Goodman's objections and the motion.  Sent. Hr'g Tr. at 18.  It also objected to the PSR's failure to apply an upward adjustment for being a leader or organizer of the enterprise.  *Id.* at 18-19.

In connection with its position, the government made a record that if the court's interpretation of *Blakely* had not been applied to the case, it would have presented evidence showing that Goodman was responsible for a quantity of at least 148.32 grams

4

of pseudoephedrine, instead of the 76.2 grams presented in the PSR. *Id.* at 27. The government stated that the evidence would also show that a gun was found in Goodman's vehicle. *Id.* The government further represented that Randy Evans would testify that Goodman had carried the gun and used it to intimidate Evans. *Id.* Evans would also testify that Goodman and Fisher paid him to obtain pseudoephedrine for them. *Id.* Based on those representations, the government contended that Goodman's base offense level should have been 32, increased by two levels for the weapon and by two levels for role in the offense, resulting in an adjusted offense level of 36.[3] *Id.* at 28.

The court overruled the parties' objections regarding role in the offense, but sustained Goodman's objection to the offense level and the weapon enhancement. *Id.* at 19-20. The court denied Goodman's motion for a declaration that the Guidelines were unconstitutional. Filing No. 117, Order at 6. Under its interpretation of *Blakely,* the court found that Goodman "could be held responsible only for the minimum amount criminalized under 21 U.S.C. § 841(a) and U.S.S.G. § 2D1.1" since no additional amount had been charged in the Indictment and either admitted or proved beyond a reasonable doubt to a jury. Filing No. 117, Order at 7; *see United States v. Terrell*, — F. Supp. —, 2004 WL 1661018 (D. Neb. July 22, 2004). Accordingly, the court found Goodman's base offense level was 12, minus 2 for acceptance of responsibility, resulting in a total offense level of 10. At criminal history category I, the court found that Goodman's sentencing range was six to twelve months. Sent. Hr'g Tr. at 30.

The court sentenced Goodman to twelve months and one day. Filing No. 124, Scott Goodman Judgment. Co-defendant Leslie Fisher was sentenced to a combined

---

[3]At Goodman's criminal offense level, this would have resulted in a sentencing range of 188 to 235 months (roughly, fifteen-and-a-half to nineteen-and-a-half years).

5

term of incarceration of 36 months for the conviction in this case as well as a violation of supervised release on another drug offense. Filing No. 123. Fisher and Goodman appealed their sentences and the sentences were reversed and remanded for resentencing in conformity with existing post-*Booker* jurisprudence. Filing No. 169, Opinion at 2 (8th Cir. Mar. 21, 2006) (*per curiam*).

      B.  Resentencing

The probation office prepared an updated PSR for the resentencing. In the updated PSR, the probation office adopted the same Guidelines calculation for resentencing that had been provided in the original PSR (offense level 30, criminal history category I, sentencing range 97 to 121 months ). Goodman again objected to the updated PSR's quantity determination and weapon enhancement. Filing No. 182. He also asserted that he should receive a two-level reduction under the Guidelines equivalent of the statutory "safety valve," U.S.S.G. § 2D1.1(b)(6), arguing that he is eligible for the reduction if the court finds the weapon enhancement does not apply. He also moved for either a downward departure under the Guidelines or a downward variance under 18 U.S.C. § 3553. Filing No. 182. In his motion for downward departure, he relies on extraordinary presentence rehabilitation and also contends that circumstances take his case outside the heartland of cases contemplated under the Guidelines.

On resentencing, the government stipulated to a quantity determination that results in a base offense level of 26 and also moved for a three-level reduction for acceptance of responsibility. The government has abandoned its earlier position that on an upward adjustment for Goodman's role in the offense, but continued to oppose any downward adjustment. The government seeks a weapon adjustment and opposes any safety-valve reduction.

The updated PSR and the evidence presented at the resentencing hearings establish that Goodman has fully served the sentence previously imposed by this court. He successfully completed a drug treatment program while in prison. He was released to a community confinement facility in May 2005. While at the facility he actively completed a drug treatment program and completed family and life skills training. Facility personnel described him as cooperative and compliant. He currently attends AA/NA meetings and participates in an after-care program. He has satisfied all conditions of supervised release and has reported for and tested clean on all drug tests.

Goodman and co-defendant Leslie Fisher were married in June 2004. Goodman has one child from a previous marriage and shares custody of the child. Until his incarceration he was current on his child support obligations of $451.00 per month. As a result of his conviction and incarceration, he was in arrears on child support in the amount of $2,900.00. He currently pays $500.00 per month in child support, plus $90.00 per month that is applied to the arrearage. He has reduced the child support debt significantly.

After his release from prison, Goodman worked as a welder and shop foreman. He had an excellent work record. He recently changed jobs to obtain improved benefits, including health insurance, and tuition assistance to enable him to return to school. He presently earns $12.00 per hour.

At the resentencing hearing on August 4, 2006, the court found that the government had not sustained its burden with respect to the weapon enhancement. Given that ruling, the court granted a continuance to enable Goodman to make a showing that he was entitled to the Guidelines equivalent of the safety valve. At the continued resentencing hearing on October 6, 2006, the government moved for reconsideration of

the weapon enhancement. Goodman moved for a minor role adjustment in addition to the safety-valve adjustment.

Goodman testified on his own behalf at the hearing. He testified that the weapon was present in his vehicle because he had gone to a pawn shop in an attempt to sell it. He wanted to sell the weapon because he needed the money and because he planned to marry Leslie Fisher and knew that, as a convicted felon, she could not possess weapons. He also testified that he had a permit for the gun and stated that it was not ordinarily his practice to have the gun in his vehicle or on his person. He also testified that the gun was loaded and that he normally kept it loaded and in his home. He was not successful in selling the weapon that day because the salesclerk who appraised weapons at the pawn shop was not there.

The government moved for a continuance in order to present evidence in connection with Goodman's showing on the safety-valve issue. It contended that, although Goodman had submitted a statement regarding his involvement in the offense to the government, the statement was not truthful or complete. At the hearing on October 19, 2006, Omaha police officer Eric White testified. He testified concerning his investigation of the offense. He stated that he believed the Goodman statement submitted to the government for the safety-valve adjustment was not complete based on items found in the vehicle and Goodman's statements to arresting officers. He testified that Goodman had not revealed the source of drugs or the manufacturer of the methamphetamine. Goodman argued that he had provided those names. Officer White conceded that Goodman had been cooperative at the time of his arrest and had consented to the search of his vehicle, but that Goodman told another officer that he would rather let Leslie Fisher tell police the name of the person for whom they had

8

obtained the methamphetamine. The record shows that she did reveal that name, apparently one of her very close relations, to officers at the time of her arrest. *See* Filing No. 54, Transcript of Hearing on Motion to Suppress at 96. The government was not amenable to a formal proffer by Goodman.

## II. DISCUSSION

Under *Booker*, the Guidelines are no longer a mandatory regime. *United States v. Gall,* 446 F.3d 884, 888 (8th Cir. 2006). "Instead, the district court must take the advisory guidelines into account together with other sentencing factors enumerated in 18 U.S.C. § 3553(a)." *Id.* After *Booker,* there are essentially three steps to determining an appropriate sentence: first, the district court should determine the applicable sentencing Guidelines range without consideration of any Guidelines departure factors; second, the district court, where appropriate, should consider the departure provisions in the Guidelines, and the resulting range is the advisory Guidelines range; third, the court should consider the rest of the statutory sentencing factors under 18 U.S.C. § 3553 to determine whether to impose the Guidelines sentence, as ascertained in the prior steps, or a nonguidelines sentence driven by the other statutory considerations. *United States v. Sitting Bear,* 436 F.3d 929, 934-35 (8th Cir. 2006).

The appropriate sentencing range under the guidelines thus remains an important sentencing factor. *United States v. Haack,* 403 F.3d 997, 1002–03 (8th Cir.), *cert. denied*, 126 S. Ct. 276 (2005); *see also United States v. Mashek*, 406 F.3d 1012, 1016 (8th Cir. 2005) (stating that the Guidelines range is the critical starting point in imposing a sentence). Post-*Booker*, it is necessary for sentencing courts to calculate the applicable advisory Guideline range, including any traditional departures or reductions, and use that range as one of the factors under § 3553(a) to determine an overall, reasonable sentence.

9

*United States v. Kiertzner*, 449 F.3d 827, 830 (8th Cir. 2006); *United States v. Mathijssen*, 406 F.3d 496, 498 (8th Cir. 2005) (noting that the district court must continue to determine the appropriate Guidelines sentencing range, as it did pre-*Booker*, before considering the other factors in 18 U.S.C. § 3553(a).

The burden is on the government to prove sentencing enhancements. *United States v. Poor Bear,* 359 F.3d 1038, 1041 (8th Cir. 2004). An objection to the findings of a PSR puts the government on notice that it must meet an additional burden at the sentencing hearing. *See United States v. Hammer*, 3 F.3d 266, 272-73 (8th Cir.1993). If a defendant objects to factual allegations in a presentence report, the court must either state that the challenged facts will not be taken into account at sentencing, or it must make a finding on the disputed issue. *See* Fed. R. Crim. P. 32(c)(3)(D). If the latter course is chosen, the government must introduce evidence sufficient to convince the court by a preponderance of the evidence that the fact in question exists. *United States v. Quintana*, 340 F.3d 700, 704-05 (8th Cir. 2003). *See also United States v. Atkins*, 250 F.3d 1203, 1211 (8th Cir.2001) ("[T]he district court is required to make findings of fact and rule on unresolved objections to the PSR[.]"). Conversely, the defendant has the burden to show eligibility for reductions in the sentence. *See, e.g., United States v. Hagan,* 412 F.3d 887, 893 (8th Cir. 2005).

The Guidelines call for an increase in a base offense level by two levels"[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The firearm must be connected with the criminal activity before its possession can be used to enhance the defendant's sentence. *United States v. Savage,* 414 F.3d 964, 966 (8th Cir. 2005). The mere presence of a firearm is an insufficient predicate for a § 2D1.1(b)(1) enhancement. *Id.*; *United States v. Shields,* 44 F.3d 673, 674 (8th Cir. 1995); U.S.S.G.

§ 2D1.1, cmt. n. 3 ("For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.").   "At sentencing, the burden is on the government to show that a dangerous weapon was present and that it was not clearly improbable that the weapon had a nexus with the criminal activity." *United States v. Betz,* 82 F.3d 205, 210 (8th Cir. 1996); *Shields,* 44 F.3d at 674 (stating that "[b]ecause the burden is on the government to establish the relationship between the defendant's possession of a firearm and the offense which he has committed, an enhancement based on § 2D1.1 is not justified absent some evidence of the same").   A showing of a "temporal and spatial nexus among the weapon[s], defendant, and drug-trafficking activity" will support application of the enhancement.   *United States v. Willie,* 462 F.3d 892, 898 (8th Cir. 2006) (involving loaded rifles mere feet away from large quantities of drugs).

The Guidelines permit a mitigating role reduction if the defendant was "a minimal participant" and a two-level reduction if he was a "minor participant."   U.S.S.G. § 3B1.2(a)-(b).   The defendant bears the burden of proving that he is entitled to a mitigating role adjustment.   *United States v. Denton,* 434 F.3d 1104, 1114 (8th Cir. 2006).   "A defendant is eligible for a minimal participant reduction if he is 'plainly among the least culpable of those involved in the conduct of a group' and lacks knowledge of 'the scope and structure of the enterprise and of the activities of others.'"   *Id.* at 115 (quoting U.S.S.G.  § 3B1.2, cmt. 4).   A minor participant reduction may be available if he "is less culpable than most other participants, but [his] role could not be described as minimal."   USSG § 3B1.2, cmt. 5.   To determine whether a reduction is appropriate, the sentencing court "compares the acts of each participant in relation to the relevant conduct for which the participant is held accountable and measures each participant's individual acts and

relative culpability against the elements of the offense.'" *Id.* (quoting *United States v. Johnson,* 408 F.3d 535, 538-39 (8th Cir. 2005).

Under U.S.S.G. § 2D1.1(b)(6), a two-level downward adjustment is available to defendants who satisfy the five criteria set out in U.S.S.G. § 5C1.2(a). These are:  that the defendant does not have more than one criminal history point; the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense; that the offense did not result in death or serious bodily injury to any person; that the defendant was not an organizer, leader, manager, or supervisor of others and was not engaged in a continuing criminal enterprise; and that the defendant has truthfully provided to the government all information and evidence the defendant has concerning the offense or offenses. U.S.S.G. § 5C1.2(a)(1)-(5). "The fact that the defendant has no relevant or useful other information to provide or that the government is already aware of the information shall not preclude a determination by the court that the defendant has complied with [the requirement that he provide truthful information]" U.S.S.G. § 5C1.2(a)(5). The defendant has the burden of affirmatively proving that he is entitled to safety-valve relief. *United States v. Alvarado-Rivera,* 412 F.3d 942, 947 (8th Cir. 2005) (en banc), *cert. denied*, — U.S. — , 126 S. Ct. 1096 (2006). In making its assessment of the truthfulness of a safety-valve proffer, the district court is entitled to draw reasonable inferences from the evidence. *Id.* at 948.

In considering a departure from the Guidelines sentence, a district court must decide whether the Sentencing Commission has forbidden, encouraged, or discouraged a departure based on a certain feature." *Koon v. United States,* 518 U.S. 81, 95-96 (1996); U.S.S.G. § 5K2.1-21 (enumerating encouraged factors). If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not

already take it into account. *United States v. Lightall*, 389 F.3d 791, 796 (8th Cir. 2004). The Guidelines discourage departures in consideration of certain other factors. *See, e.g., U.S.S.G. §* 5H1.6 (discouraging consideration of family ties and responsibilities). Although discouraged factors, or encouraged factors already taken into account by the Guidelines, do not ordinarily furnish grounds for departure, they can form the basis for a departure "if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Lightall,* 389 F.3d at 796. Thus, pre-*Booker*, a district court could grant a downward departure pursuant to § 5K2.0 if it determined that a mitigating circumstance, either in kind or to a degree, was not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines and the case falls outside the heartland of cases covered by the Guidelines. *United States v. Bueno*, 443 F.3d 1017, 1024 (8th Cir. 2006); *United States v. Hadash,* 408 F.3d 1080, 1083 (8th Cir. 2005) (holding, post-*Booker*, that a district court can depart without abusing its discretion if the case falls outside the heartland of cases in the Guideline at issue).

Because the Sentencing Commission accounted for ordinary post-offense rehabilitation in providing an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, a defendant's rehabilitation must be exceptional enough to be atypical in order to warrant a departure on that basis. *See United States v. Rogers*, 400 F.3d 640 (8th Cir. 2005); *United States v. Chapman,* 356 F.3d 843, 849 (8th Cir. 2004) ("We hold today that atypical post-offense rehabilitation can by itself be the basis for a departure under § 5K2.0."); *United States v. De Shon,* 183 F.3d 888, 890 (8th Cir. 1999) (affirming departure on a showing that the defendant's "life had changed completely and he is now a different person."). However, "[p]ost-sentencing rehabilitative efforts, even if exceptional,

13

undertaken by a defendant after imposition of a term of imprisonment for the instant offense are not an appropriate basis for a downward departure when resentencing defendant for that offense."  U.S.S.G. § 5K2.19, p.s.; *United States v. Hasan,* 245 F.3d 682, 686 (8th Cir. 2001) (to allow a downward departure based on post original sentencing in-prison good conduct would result in a substantial windfall to those defendants who benefit from a resentencing when the Sentencing Commission lowers a sentencing range and is inconsistent with Congressional policies for reducing time served for good behavior in prison).

Once the district court calculates the advisory Guidelines range, it "may then impose a sentence outside the range in order to 'tailor the sentence in light of the other statutory concerns' in § 3553(a)."  *United States v. Gall,* 446 F.3d 884, 889 (8th Cir. 2006) (*quoting Booker*, 543 U.S. at 245-46 (2005)).   In considering whether to impose a sentence outside the Guidelines, the court considers the factors set forth in Section 3553 to determine a "reasonable sentence."  *Booker*, 543 U.S. at 245-46.  The district court has a duty under 18 U.S.S.G. § 3553(a) to "'impose a sentence sufficient, but not greater than necessary,' to comply with sentencing goals considering the nature and seriousness of the offense, the history and characteristics of the defendant, and the need for the sentence to provide justice, deterrence, and other goals of punishment." *United States v. Pappas,* 452 F.3d 767, 773 (8th Cir. 2006). The court must also consider the need to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2)(C)-(D).

The district court's reasonableness determination will be reviewed for abuse of discretion.  *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006).  A sentence

within the Guidelines range is presumptively reasonable, but "it does not follow that a sentence outside the guidelines range is unreasonable." *United States v. Myers,* 439 F.3d 415, 417 (8th Cir. 2006). A nonguidelines sentence "may be unreasonable if a sentencing court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case." *Haack*, 403 F.3d at 1004.

Although a sentence within the applicable Guideline range is presumptively reasonable, in certain "highly unusual circumstances," a defendant may rebut the presumption of reasonableness. *Medearis*, 451 F.3d at 920 (stating that "to consider the guidelines is not to be ruled by them"). District courts <u>must</u> vary from the Guidelines range where other § 3553 factors would render a sentence within the Guidelines range unreasonable. *Id.* (emphasis added).

"'Sentences varying from the guidelines range . . . are reasonable so long as the judge offers appropriate justification under the factors specified in 18 U.S.C. 3553(a).'" *Gall,* 446 F.3d at 889 *(quoting United States v. Claiborne,* 439 F.3d 479, 480 (8th Cir. 2006), *cert. granted*, 2006 WL 218967 (Nov. 3, 2006) (No. 06-5618)). The farther the district court varies from the presumptively reasonable Guidelines range, the more compelling the justification based on the § 3553(a) factors must be. *Id.; see also United States v. Larrabee*, 436 F.3d 890, 892 (8th Cir. 2006) ( noting that as the size of a variance from the advisory Guidelines sentence grows, so too must the reasons that warrant it). A fifty-percent increase from the Guidelines sentencing range is characterized as extraordinary. *United States v. Meyer,* 452 F.3d 998, 1001 (8th Cir. 2006); *see also*

*United States v. Bryant,* 446 F.3d 1317, 1319-20 (8th Cir. 2006) (characterizing a fifty-seven percent variance as extraordinary); *Larrabee,* 436 F.3d at 892-93 (fifty-four percent variance is extraordinary).[4]

Factors that were discouraged or prohibited departure factors under the mandatory Guidelines may be considered in applying the § 3553(a) factors under *Booker.*   *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006); *United States v. Robinson,* 454 F.3d 839, 842 (8th Cir. 2006) (recognizing that "pre-*Booker* departures and post-*Booker* variances are not the same" and that there may be "cases that would not justify a departure under the Guidelines but which are appropriate for a variance" as well as "cases in which a combination of a Guidelines departure and other § 3553(a) factors may produce a lower reasonable sentence than a departure alone").  Also, rehabilitation may be entitled to some weight in this analysis as long as it does not "trump all the other considerations listed in § 3553(a)." *Medearis,* 451 F.3d at 921; *but see United States v. Robinson,* 454 F.3d at 842-43 (noting that even in cases where a rehabilitation is dramatic and hopefully permanent, a district court cannot place too much emphasis on that fact).

One of the highly unusual circumstances that will support a nonguidelines sentence is the existence of unwarranted sentence disparities between defendants who have been found guilty of similar conduct.  *See United States v. Krutsinger,* 449 F.3d 827, 830 (8th Cir. 2006) (recognizing that "'there may be situations where sentencing factors may be so complex, or other § 3553(a) factors may so predominate, that the determination of a precise sentencing range may not be necessary or practical'") (*quoting United States v.*

---

[4]The United States Supreme Court has granted certiorari on the issue of whether it is "consistent with *United States v. Booker* to require that a sentence which constitutes a substantial variance from the Guidelines be justified by extraordinary circumstances." *See Claiborne v. United States*, 2006 WL 2187967 (Nov. 3, 2006) (No. 06-5618).

*Haack*, 943 F.3d at 1003); *Lazenby,* 439 F.3d at 933 (noting that *Booker* gives district courts the discretion to cure an injustice such as that caused by co-defendant stipulations to differing quantities of drugs that are not supported by the facts). Also, similarly-situated or nearly-identical individuals who commit the same crime and participate in the same conspiracy should not be subjected to widely varying sentences due to a mere "happenstance in timing" of indictments or plea agreements. *See Krutsinger*, 449 F.3d at 830 (affirming adjustment to sentence where development of the government's case over time resulted in a longer sentence for an equally or less-culpable co-defendant due to varying quantity determinations).

III. ANALYSIS

A. Guidelines calculation

Given the government's concession that it could only prove a quantity of drugs that would result in a base offense level of 26, the court finds that Goodman's base offense level is 26. The court will grant the government's motion for a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(b), resulting in an offense level of 23.

With respect to the government's motion for reconsideration of its finding on the weapon enhancement, the court finds the motion should be denied. The government has not sustained its burden of showing that the weapon was connected to the crime. The government is required to show that a weapon was possessed and that it is "not clearly improbable" that the weapon was connected to the offense.[5] The government has not

---

[5]The court questions the validity of this burden of proof. The burden to prove that a fact is "not improbable" effectively shifts the affirmative burden of showing improbability to the defendant. There is a subtle quantitative difference between a fact that is "not improbable" and its logical converse–that a fact is probable. Whatever the distinction, the appropriate burden would be on the government to prove the "probability" of a connection between the weapon and the crime. However, the court need not address the issue since Goodman's testimony rebuts the government's showing under either standard.

made this showing.  Goodman testified that the weapon was in his vehicle because he planned to sell the weapon.  The court credits that testimony.  Goodman's explanation that he attempted to sell the weapon because he needed money and because he planned to marry co-defendant Fisher and knew that, as a convicted felon, she was prohibited from possessing weapons is eminently logical in view of subsequent events.  In addition, the testimony is consistent with the police reports and with statements Goodman made at the scene.  Further, Goodman readily admitted to police that he possessed the weapon and he testified that he had a permit for the weapon.  In addition, although the weapon was in the vehicle, it was on the dashboard in its box, not "at the ready" to protect or defend Goodman's any drug-related activities or to intimidate customers.  Accordingly, defendant's objection to the imposition of a weapon enhancement in the PSR is sustained and the court will not impose a two-level increase under U.S.S.G. § 2D1.1(b)(1).

The court also finds that the evidence presented to the court shows that Goodman played a minimal role in the offense.  He was plainly the least culpable of the three co-defendants in this case.  The evidence shows that his involvement was only to assist Leslie Fisher in obtaining pseudoephedrine.  A minimal role reduction for Goodman is consistent with the minor role adjustments granted to co-defendants Leslie Fisher and Randy Evans in this case.  Both of those defendants were more culpable than Goodman. Absent the statements of Randy Evans, there is no evidence that Goodman was deeply involved in any drug-dealing conspiracy.  The evidence presented to the court shows that Evans was considerably less involved than Fisher.  It is as likely as not that any paraphernalia allegedly connected to methamphetamine manufacturing found in Goodman's vehicle either belonged to Leslie Fisher or were connected with use, not manufacture of methamphetamine.  Accordingly, Goodman's objection to the failure of the

18

PSR to afford a minor or minimal role adjustment will be granted. Goodman's offense level of 23 will be reduced by four levels to level 19.

With respect to the two-level downward safety-valve adjustment under U.S.S.G. § 2D1.1(b)(6), the court finds that Goodman has not sustained his burden of showing that he is entitled to the adjustment. Although Goodman has satisfied the first four requirements under U.S.S.G. § 5C1.2, he has not refuted the government's evidence that information he provided was incomplete. The court notes that this is a close question and the record is not totally clear with respect to the names that Goodman revealed to authorities. He has not shown that he provided all the information and evidence he had concerning the offense. Because the burden is on defendant to prove eligibility for the adjustment, defendant's motion for a safety-valve adjustment is denied. Accordingly, the court determines that Goodman's sentencing range before departures, at criminal history category I and offense level 19, is 30 - 37 months.

Goodman also moves for a downward departure for extraordinary rehabilitation under U.S.S.G. § 5K2.0. The court agrees that consideration of Goodman's rehabilitation is not prohibited by U.S.S.G. § 5K2.19 because Goodman does not seek consideration of in-prison rehabilitative efforts, but rather his rehabilitation during the extended periods of time both before and after his incarceration. During those periods of time, Goodman was effectively under pretrial supervision. The court finds Goodman's rehabilitation is sufficiently atypical and exceptional to warrant a departure.

In the court's experience, Goodman's rehabilitation is far outside the norm. First, it is rare that a defendant charged with a drug crime will show complete compliance with a drug-testing regimen while under supervision. Goodman has reported for and tested clean on all drug tests. He was ordered to submit to testing on a weekly basis for a

19

significant period of time and he traveled a significant distance from his home in Iowa to comply. He has met all of the significantly restrictive conditions of supervised release for an extended period of time and while under a significant level of stress due to the prolonged uncertainty with respect to his resentencing.

Also, it is rare that a drug offender, especially a methamphetamine offender, will maintain consistent and continuous employment while under supervision. It is even more unusual for such an offender to have an excellent work record, and to have the ambition to improve his situation with further education. Another unusual factor is Goodman's devotion to his family, as reflected in his fulfillment of child support obligations, maintenance of custody and visitation with his child and step-child, and his efforts to support his wife's recovery and rehabilitation. The court is sadly familiar with the addictive power of methamphetamine and the difficulty of overcoming that addiction. Goodman's case is one of the exceedingly rare cases in which the court can envision a positive result. Goodman has shown the court that he can be a productive member of society and he is, in fact, an asset to his community. His family, his community, and other communities in rural Nebraska and Iowa will benefit by his example. The court finds that Goodman has turned his life around and his rehabilitation is sincere and genuine. The court finds that Goodman's recovery and rehabilitation are atypical and exceptional and the court will accordingly depart from the Guidelines range on that ground.

As discussed further below in connection with a variance from the Guideline range, the court finds a further departure is warranted under U.S.S.G. § 5K2.0 because the timing of Goodman's first sentencing, occurring as it did in a time of great sentencing uncertainty as a result of the *Blakely and Booker* decisions, combined with the change in the facts underlying the court's sentencing determination, create a mitigating factor that

20

takes this case outside the "heartland" of cases that the Sentencing Commission considered when formulating the guideline applicable to Goodman's offense. The Guidelines became advisory shortly before Givens's first sentencing. At that time, the court did not have the benefit of either *Booker* or subsequent Eighth Circuit caselaw on the issue. The facts presented in connection with Goodman's first sentencing differ significantly from the evidence presented on resentencing. Also, during the time that this action wound its way through the judicial system, Goodman fully served his sentence, was released, and returned to society as a functioning and productive citizen.

At the time Goodman was first sentenced, this court imposed what it considered to be a fair sentence. The court believed that Goodman needed a period of incarceration in order to reduce the likelihood of his recidivism and to remove him from negative influences. Judging by Goodman's exemplary behavior since his release, it appears that the amount of incarceration was sufficient to achieve that objective. Under these unusual circumstances, the court finds there is no benefit to the imposition of any additional prison time. Accordingly, the court will grant defendant's motion for a downward departure and will impose a sentence of time served, together with three years of supervised release beginning on the date of resentencing.

B. Section 3553(a) factors

The court finds a sentence of time served is a reasonable sentence in consideration of the sentencing concerns outlined in 18 U.S.C. § 3553(a). If the court had not departed from the Guidelines sentence under U.S.S.G. § 5K2.0, the court would have imposed the same sentence as a variance under Section 3553(a).

Considering the nature and circumstances of the offense, there is no evidence that Goodman was more than a small player in any methamphetamine manufacturing

enterprise.  Most evidence against Goodman came from Randy Evans, whose credibility has since been discredited.  Additionally, with respect to the nature of the crime, the court notes that Goodman's conduct, though undoubtedly criminal,  was a step removed from the actual manufacturing of or trafficking in methamphetamine.   Procuring precursor chemicals, though a necessary step in manufacture, is less serious than the actual manufacture and sale of methamphetamine.

Further, the court considers Goodman's rehabilitation to be relevant to its determination of a reasonable sentence under § 3553 in that it relates to the defendant's history and characteristics.   Goodman has no criminal history points.  His only previous contacts with the criminal justice system occurred over fifteen years ago, when he was nineteen years old.  He managed to stay out of trouble for most of his life, until he became addicted to methamphetamine.  He is now employed and married.  He has fulfilled all the requirements of his drug rehabilitation programs and continues to comply with the conditions of supervised release.  He has paid child support since his release from incarceration.

This sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment.  The court notes that defendant has already served a significant amount of prison time.  The sentence is just, given that the benefit to society of a sentence of further imprisonment is outweighed by the harm that sentence would cause to Goodman's family, especially to his wife, Leslie Fisher, who relies on Goodman for support of her drug-rehabilitation efforts, and his son, who relies on Goodman for child support. The extended period of strictly-conditioned supervised release, together with the term of incarceration that Goodman has already served, will protect society and will deter others from such conduct.

In light of Goodman's demonstrated ongoing recovery and rehabilitation, maintenance of employment, payment of child-support obligations, and involvement in a stable marital relationship, there appears to be little need to protect the public from any future crimes. Nevertheless, the public's interest in being free from any future crimes will be protected by the court's ability to incarcerate him should he violate the conditions of supervised release. Further imprisonment, however, would not serve to protect society because a return to prison would interfere with Goodman's recovery and could result in a relapse.

The court also considers the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the United States Sentencing Guidelines, and any policy statements promulgated thereto. 18 U.S.C. § 3553(a)(3)-(4); *Booker*, 543 U.S. at 259-60. As discussed above, the court has calculated Goodman's Guidelines sentence and has imposed a sentence under the Guidelines. To the extent that a Guidelines departure cannot be supported, a variance to time served would be imposed with due consideration of the sentences, categories of crimes and categories of defendants presented in the Guidelines.

Most importantly, the court considers the need to avoid sentencing disparity between defendants who have committed similar crimes. As discussed in co-defendant Fisher's Sentencing Memorandum, the sentence imposed on Goodman eliminates sentencing disparity between the defendants in this case, as well as between defendants charged with crimes similar to one that the government's evidence would have supported in this case. Accordingly, the court finds a sentence of time served, together with a period of three years of supervised release from the date of the resentencing, will adequately address the sentencing objectives outlined in Section 3553.

23

This case, because of its timing and procedural posture, illustrates governmental over-reaching that could have resulted in a miscarriage of justice. If the court had adopted the findings in the 2004 PSRs under the then-mandatory Guidelines, Goodman and Fisher would each have been assigned a quantity of pseudoephedrine that would have resulted in a base offense level of at least 32. The government urged the court to hold Goodman and Fisher responsible for twice the amount of pseudoephedrine presented in the PSR based only on the hearsay statements of co-defendant Randy Evans. The government took the position in 2004 that Goodman's and Fisher's offense levels, which were based on a quantity that had already been doubled, should then have been increased by four additional levels for roles in the offense and possession of a weapon in connection with the crime. Those enhancements were also based on the dubious, uncorroborated statements of Randy Evans. The government's position in 2004 was based on information it now disavows, apparently as unreliable.

In 2004, a preponderance of evidence could have established the quantity and enhancements that the government sought, thus exposing Goodman, on barely a thread of evidence, to a sentence of fifteen years for his first drug offense.[6]  Instead, while the original sentences were on appeal, the government backed away from its quantity determination and from its position that the evidence supported additional enhancements. It abandoned its reliance on the statements of Randy Evans, apparently losing confidence

---

[6]The ratio between the low end of the sentence that Goodman's would have been exposed to in 2004 and the sentence of one year that he has received approaches, if not surpasses the "tail-wagging-dog" threshold necessary to establish a due process violation.

in his credibility.[7]  This left the government with little or no evidence of any serious criminal wrongdoing beyond the possession of precursor chemicals by Goodman.

In the intervening years between Randy Evans's inculpation of Fisher and Goodman as the organizers of a methamphetamine-manufacturing enterprise, it has become clear that it is equally likely that Randy Evans himself was the mastermind and that Fisher and Goodman were minor or minimal players.  In contrast to the scenario that the government presented in 2004—that Goodman and Fisher organized and ran a methamphetamine-manufacturing and distribution enterprise and used guns to intimidate customers and co-conspirators—the court is presented on remand with nothing more than two methamphetamine addicts who procured relatively small quantities of a precursor chemical, then commonly available in most stores, in exchange for a small sum of money. The court has not been presented with any evidence on resentencing that would support anything near the sentence of fifteen years that the government sought in 2004.

An amended judgment and commitment and statement of reasons in accordance with this sentencing memorandum will issue this date.

DATED this 22th day of November, 2006.

BY THE COURT:


s/ Joseph F. Bataillon
Chief U.S. District Court Judge

---

[7]The case is also illustrative of the infirmity of unquestioning reliance on dubious and self-serving statements of either informants, cooperating witnesses, or co-conspirators to establish criteria crucial to sentencing.  Generally, the statements attributed to an informant are hearsay several-fold:  first related to law enforcement, then to a prosecutor, then to a probation officer and then to the court.  There is no indica of the reliability of these  statements; they are inherently suspect since they are usually made either in the hope or promise of a government motion for departure for substantial assistance.