IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | 8:03CR566 |
| v. | ) | |
| SCOTT GOODMAN, | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |

Defendant Scott Goodman is before the court on remand from the Eighth Circuit Court of Appeals for resentencing. Filing No. 169. This sentencing memorandum supplements findings made on the record at sentencing hearings on August 4, 2006; October 6, 2006; October 19, 2006; and March 14, 2008.

## I. BACKGROUND

Defendant Goodman and co-defendants Leslie Fisher and Randy Evans were charged in this case with conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession of pseudoephedrine, knowing it would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(1). Filing No. 1, Indictment at 1. This case has been appealed and remanded for resentencing by the Court of Appeals for the Eighth Circuit ("Eighth Circuit") twice. Most recently, the Eighth Circuit found that this court had committed clear error in granting Goodman a four-level reduction based on his role as a minimal participant under U.S.S.G. § 3B1.2(a). *United States v. Goodman,* 509 F.3d 872, 877 (8th Cir. 2007). It also found error in the court's consideration of Goodman's postsentencing rehabilitation in connection with either a departure or a variance. *Id.*

The facts are set forth in the court's earlier opinion and will be restated only as relevant to Goodman's resentencing.  *See* Filing No. 200, Sentencing Memorandum ("Sent. Mem.").  Goodman was arrested on November 12, 2003, with his then-girlfriend, Leslie Fisher, after Fisher had been caught shoplifting pseudoephedrine.  He and Fisher were both charged with conspiracy to manufacture methamphetamine, in violation of § 21 U.S.C. §§ 841(a)(1) and 846, and possession of pseudoephedrine, in violation of 21 U.S.C. § 841(c)(1).  Filing No. 1, Indictment at 1.  No drug quantity was charged in the indictment.  *Id.*  Co-defendant Randy Evans was later arrested and charged with the same offenses.  *Id.*  Fisher and Goodman were initially sentenced shortly after the United States Supreme Court decided *Blakely v. Washington,* 542 U.S. 296, 392 (2004), which invalidated the State of Washington's mandatory sentencing guidelines and called the federal sentencing guidelines into question.  Fisher and Goodman entered "straight up" pleas of guilty to the indictment and did not enter into plea agreements with the government.  Filing No. 89, Leslie Fisher Petition; Filing No. 90, Scott Goodman Petition.  Randy Evans, however, entered into a plea agreement with the government, under which the government agreed to consider Evans's cooperation in connection with sentence reductions under either U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e).  Filing No. 78, Evans Plea Agr. at 3.  The government never moved for any reduction of Evans's sentence.

In preparation for the initial sentencing, the probation office determined that Goodman should be held responsible for a quantity of pseudoephedrine that established his base offense level at 30.[1]  Goodman PSR at 6, 8.  It also found that the facts

---

[1]The amount of pseudoephedrine was based on quantities seized from Goodman and Fisher at the time of their arrest, as well as quantities seized for Evans and quantities that Evans stated he had obtained from Goodman and Fisher in the past.

supported a two-level enhancement for possession of a dangerous weapon. *Id.* at 8. The probation office noted that the government refused to move for the third-level reduction for acceptance of responsibility under U.S.S.G. § 3A1.1(b) and thus provided only a two-level reduction. *Id.* No role-in-the-offense adjustment was recommended. *Id.* at 7. Goodman's criminal history category was I and his resulting Guidelines sentencing range was 97 to 121 months.[2] At the time of Goodman's first sentencing, this court interpreted *Blakely* to mean that the quantity of drugs had to be charged in the indictment and proved to a jury beyond a reasonable doubt. *See United States v. Terrell*, — F. Supp. —, 2004 WL 1661018 (D. Neb. July 22, 2004). Accordingly, the court calculated Goodman's Guidelines sentence as follows: base offense level 12, less 2 for acceptance of responsibility, resulting in a total offense level of 10. At criminal history category I, the court found that Goodman's sentencing range was six to twelve months. Filing No. 145, Sentencing Hearing Transcript ("Sent. Hr'g Tr.") at 30. The court sentenced Blakely to a term of incarceration of 12 months and one day. Filing No. 117, Order at 7; Filing No. 124, Scott Goodman Judgment. Goodman has served that sentence.

---

[2]The probation office also calculated that Fisher's base offense level should be 30. After subtraction of three points for acceptance of responsibility, her total offense level was 27, resulting in a sentencing range of 87-108 months. Fisher had a criminal history category of III because she had been previously convicted of a methamphetamine offense in this court, and was under supervision for that offense at the time of her arrest in this case. The court sentenced Fisher to a combined term of incarceration of 36 months for the conviction in this case and the violation of supervised release in the other case. Filing No. 123. The government appealed Fisher's sentence and the action was remanded for resentencing for consideration of the Guidelines as advisory under *United States v. Booker,* 543 U.S. 220, 260 (2005). She was again sentenced to the same sentence, or time served. Her resentencing was appealed by the government, but the appeal was later abandoned.

The probation office found co-defendant Randy Evans responsible for a quantity of drugs that resulted in a base offense level of 28. Evans PSR at 7. After application of a three-level adjustment for acceptance of responsibility, and a two-level reduction for role in the offense, his Guidelines sentencing range was 70 to 87 months. *Id.* at 18. He entered into a binding cooperation plea agreement with the government that recommended a minor role adjustment and provided for an offense level of 26. Filing No. 78, Randy Evans Plea Agr. at 1 & 4. Pursuant to that agreement, Evans was sentenced to 42 months. Filing No. 114, Judgment.

The government appealed the sentence and the action was remanded for consideration of the Supreme Court's holding in *United States v. Booker,* 543 U.S. 220, 260 (2005), that the federal sentencing Guidelines could be constitutionally applied if they were advisory. Filing No. 169, Opinion at 2 (8th Cir. Mar. 21, 2006) (*per curiam*); *United States v. Goodman,* 509 F.3d at 874.

At Goodman's second sentencing, the government stipulated to a quantity determination that resulted in a base offense level of 26 and also moved for a three-level reduction for acceptance of responsibility. It abandoned its earlier position that an upward adjustment for Goodman's role in the offense was applicable, but continued to oppose any downward adjustment. It also sought a weapon enhancement and opposed any safety-valve reduction. The court found Goodman was entitled to an adjustment for minimum role in the offense and found the evidence did not support a weapon enhancement. Filing No. 200, Sent. Mem. at 17-19. The court also found that Goodman's postoffense rehabilitation was extraordinary and resentenced Goodman to the time he had served. *Id.* at 19; Filing No. 202, Amended Judgment. In addition, the court imposed the maximum period of supervised release, three years, commencing on the date of the resentencing. *Id.* On appeal, the government challenged the court's minimal role adjustment and its finding of extraordinary postoffense rehabilitation, but did not appeal the court's weapon finding. *Goodman,* 509 F.3d at 875-77. The Eighth Circuit again reversed and remanded. *Id.* at 877. The Eighth Circuit did not address this court's application of the sentencing factors in 18 U.S.C. § 3553(a).

After the Eighth Circuit reversed, but before Goodman's resentencing hearing, the Supreme Court decided *Kimbrough v. United States*, 552 U.S. —, —, 128 S. Ct. 558

4

(2007), and *Gall v. United States*, 552 U.S. —, —, 128 S. Ct. 586 (2007). Those cases clarified the extent of a district court's discretion after *Booker*. *See* 552 U.S. at —, 128 S. Ct. at 575 (holding that it is not an abuse of discretion for a district court to find that the Guidelines "crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes"); *Gall,* 552 U.S. at —, 128 S. Ct. at 595 (rejecting an appellate rule that required extraordinary circumstances to justify a sentence outside the Guidelines).

The hearing on Goodman's sentencing on remand was continued at the government's request so that it could investigate Goodman's substantial assistance. Filing No. 234. The government later filed a motion for downward departure for substantial assistance under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). Filing No. 235. At the rescheduled sentencing hearing, the government informed the court that Goodman had provided Iowa law enforcement officials with information that lead to the arrest and conviction of an individual for manufacture and distribution of methamphetamine. The individual was sentenced to ten years in prison. Goodman's information also led to the discovery of a methamphetamine lab. There is no dispute that Goodman would have testified in court against the individual if necessary.

The government argued that Goodman's Guidelines sentence should be calculated to be Offense Level 23 (base offense level 26 less 3 for acceptance of responsibility) at Criminal History Category I, resulting in a sentencing range of 46 to 57 months. It recommended a 33% departure from that range for Goodman's substantial assistance, which would result in a sentence of 30 months. In seeking further incarceration of the defendant, the government argued that the evidence showed that Goodman was more involved than the other two defendants and that Goodman was the

"cooker" of the methamphetamine.  The government asserted that when Goodman was arrested he was in possession of "distribution quantities" of methamphetamine, a drug scale and manufacturing precursors such as lithium batteries and coffee filters.

Defendant agreed with the government's calculation of the offense level at 23, but argued for application of a minor role adjustment of 2 levels, resulting in a total offense level of 21.  Offense level 21 at criminal history category I would result in an advisory Guidelines calculation of 37 to 46 months.[3]  Defendant offered a proffer that if he were to testify, he would testify that the precursor items found in his truck belonged to Leslie Fisher.  The government objected to the proffer, and Scott Goodman then testified at the hearing.

Goodman testified that he is now married to Leslie Fisher.  He testified that numerous items were in his truck at the time it was searched, including groceries, tools, and projects for his job.  He stated that the tin foil and coffee filters had been purchased along with other groceries in the truck.  He testified that he did not know the lithium batteries were in truck, but assumed they belonged to Leslie and that she was delivering them to the same person for whom she was getting the pseudoephedrine.  With respect to the baggies of methamphetamine found on his person, he testified that the methamphetamine belonged to him for his personal use and to Leslie for her personal use.  He stated that Leslie had asked him to hold her methamphetamine for her while she was in the store.

Goodman also testified that he has never manufactured or witnessed the manufacture of methamphetamine.  He testified that he knew Leslie's family had been

---

[3]Application of a 33% reduction for substantial assistance to the low end of that range would amount to a sentence of approximately 24 months.

6

prosecuted for drug crimes.  He also knew of their reputation as methamphetamine dealers and manufacturers.  He stated that his probation officer had forbidden him to contact or associate with Leslie's extended family.  He testified that he was aware that Leslie's brother, Andrew Fisher, had been convicted twice in Iowa state court for methamphetamine manufacture and he presumed Leslie had purchased precursors for her brother.  He also testified that he and Leslie had used methamphetamine with Leslie's family and had purchased methamphetamine from Andrew Fisher.  He further testified that he had the miniature drug scale to weigh his own purchases of drugs, and to ensure that Leslie was not taking some of his supply.  He stated that he trusts his wife with everything except dope.  He also testified that he developed his methamphetamine habit after he became involved with Leslie, about six months before they were arrested.

The government moved for a continuance to refute the evidence presented by Goodman.  The defendant objected to any continuance, arguing that the government had been provided with ample time to obtain the testimony of Randy Evans, if it had so desired.  The defendant also argued that if Leslie Fisher were called to testify, it would not be likely that her testimony would differ from Goodman's testimony.  The government questioned Goodman's credibility, arguing that his testimony in court was at odds with the proffer statement he had provided to the government shortly before the second sentencing.  The court reviewed the proffer statement and found no inconsistencies.  The government was not able to articulate what evidence it could present to refute Goodman's testimony.  Accordingly, the government's motion for a continuance was denied.

The court's review of records of Goodman's supervision by the Probation Office show that Goodman is employed at John Deere in Malvern, Iowa, and his employer

speaks highly of him.  He has submitted to DNA and drug testing, maintains sobriety and submits monthly written reports as directed by his probation officer.  Goodman and his wife have had problems and altercations, generally involving her potential relapse into drug use, over the past several years.  After an episode of domestic violence, they were directed to reside separately and to obtain counseling.  They eventually reconciled and Fisher gave birth to their daughter in August 2007.  Recently, the court was informed that Leslie had violated the terms of her supervised release and it appears she is using drugs. She was directed by her probation officer to obtain a substance abuse evaluation and counseling and told that she could not return to the home she shared with Goodman. Goodman was awarded temporary custody of their daughter and he and the infant daughter are presently living with his mother.

## II. DISCUSSION

### A.  The Law

In *United States v. Booker,* the Supreme Court found the mandatory federal sentencing guidelines system violated the Sixth Amendment.  *Booker,* 543 U.S. at 226-27. The Supreme Court determined, however, in the remedial portion of the *Booker* opinion, that the constitutional infirmity could be cured by modifying the federal sentencing statute to make the Guidelines advisory.  *Id.* at 245.  Accordingly, the range of choice in sentencing dictated by the facts of the case has been significantly broadened.  *Gall,* 552 U.S. at —, 128 S. Ct. at 602 (finding a sentence outside the Guidelines to be reasonable); *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570 (2007) (noting that courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines); *Rita v. United States,* 551 U.S. —, —, 127 S. Ct. 2456, 2465 (2007) (holding

that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); *Cunningham v. California,* 549 U.S. —, —, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines).

Under the Sentencing Reform Act, as modified by *Booker,* judges are required "to take account of the Guidelines together with other sentencing goals" when fashioning a defendant's sentence. *Booker,* 543 U.S. at 261. As the Supreme Court recently clarified in *Gall*, "the Guidelines should be the starting point and the initial benchmark" in determining a sentence. *Gall,* 552 U.S. at —, 128 S. Ct. at 596 ("a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."); *United States v. Hernandez,* — F.3d —, —, 2008 WL 623616, *2 (8th Cir. Mar. 10, 2008) (noting that "[a] district court's first step in sentencing proceedings is to correctly calculate the defendant's Guidelines range"). District courts must therefore "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 570 (*quoting Booker,* 543 U.S. at 245-246); *Gall,* — U.S. at —, 128 S. Ct. at 596 (stating "the Guidelines are not the only consideration, the district judge should consider all of the § 3553(a) factors" to determine the appropriate sentence).[4] The district court is free to

---

[4]Section 3553(a) lists seven factors that a sentencing court must consider. The first factor is a broad command to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The second factor requires the consideration of the general purposes of sentencing, including: "the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

The third factor pertains to "the kinds of sentences available," 18 U.S.C. § 3553(a)(3); the fourth to the

make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines. *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 577 (Scalia, J., concurring) (noting that "any thumb on the scales," indicating that the "the Guidelines must be followed even where the district court's application of the § 3553(a) factors is entirely reasonable" would violate the Sixth Amendment because "the 'advisory' Guidelines would, over a large expanse of their application, *entitle* the defendant to a lesser sentence but for the presence of certain additional facts found by judge rather than jury") (emphasis in original).

The Sentencing Reform Act "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570.  Also, the statute "further provides that, in determining the appropriate sentence, the court should consider a number of factors, including 'the nature and circumstances of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established' by the Guidelines, 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'"  *Id.*

---

Sentencing Guidelines, 18 U.S.C. § 3553(a)(4); the fifth to any relevant policy statement issued by the Sentencing Commission, 18 U.S.C. § 3553(a)(5); the sixth to "the need to avoid unwarranted sentence disparities," § 3553(a)(6); and the seventh to "the need to provide restitution to any victim," § 3553(a)(7).

The district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Gall,* 552 U.S. at —, 128 S. Ct. at 597.   "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.,* 552 U.S. at —, 128 S. Ct. at 596.  If the court decides that an outside-Guidelines sentence is warranted, the court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.  *Id.*  The Supreme Court rejects, however, the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence."  *Id.* at 595. Moreover, an appellate court may not apply a presumption of unreasonableness to a sentence outside the Guidelines.  *Gall,* 552 U.S. at —, 128 S. Ct. at 597.

The Supreme Court recognizes that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms.  *Id.* at 595.  Nevertheless, the court recognizes that offenders on probation are subject to several substantial restrictions on their liberty, including provisions requiring that they may not leave the judicial district, move, or change jobs without notifying their probation officer or the court, that they report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, refrain from excessive drinking, and submit to drug testing.  *Id.*  In certain situations, a sentence of probation instead of incarceration may work to promote respect for the law by illustrating a rejection of the view

11

that the law is merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing.  *Id.* at 599.

The Guidelines were developed to advance sentencing reform goals of reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparence of punishment. *See* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing at 11-12 (Nov. 2004) (hereinafter, "Fifteen-Year Assessment").  The Sentencing Commission was originally charged by Congress with developing guidelines to meet the "purposes of punishment" set out in § 3553(a)(2), and to achieve proportionality, crime control through incapacitation and deterrence, and rehabilitation.  *Id.* at 12-13.  Toward that end, the Commission developed and used data on past practices and recidivism in formulating the Guidelines.  *See id.* at 14 (noting that the Guidelines are based in part on statistical analyses of pre-Guidelines sentencing practices); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567 (regarding drug trafficking Guidelines).  Based on sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range.  Fifteen-Year Assessment at 14.  Accordingly, in many cases, the Guidelines represent a reasonable estimation of a fair sentencing range.  *See Kimbrough*, 552 U.S. at —, 128 S. Ct. at 564 (noting that in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives).

However, for policy reasons and because statutory mandatory minima dictated many terms of the Guidelines, the Commission departed from past practices in setting offense levels for such crimes as fraud, drug trafficking, and child crimes and sexual

offenses.  Fifteen-Year Assessment at 15, 72-73; *see Kimbrough,* 552 U.S. at —, 128 S.
Ct. at 567.  Consequently, the Guideline ranges of imprisonment for those crimes are a
less reliable appraisal of a fair sentence.  *See Kimbrough,* 552 U.S. at —, 128 S. Ct. at
574.  The Guidelines for possession of precursor chemicals are among those promulgated
pursuant to Congressional directive.  *See, e.g.,* U.S.S.G. app. C, amends. 371 (1991),
447 (1992), 519 (1995), 541 and 557 (1997), 605 and 606 (2000), 611 and 625 (2001),
646 (2002), 661(2003), 667 and 668 (2004), 679 (2005), 705 and 707 (2007). [5]

In cases involving application of Guidelines that do not exemplify the Commission's
exercise of its characteristic institutional role of basing its determinations on "'empirical
data and national experience, guided by a professional staff with appropriate expertise,'"
it is not an abuse of discretion for a district court to conclude when sentencing a particular
defendant that application of the guideline will yield a sentence "greater than necessary"
to achieve § 3553(a)'s purposes.  *Id.*, 552 U.S. at —, 128 S. Ct. at 574-75 (quoting *United
States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).  A
sentencing judge has greater familiarity with an individual case and individual defendant
than the Commission or the appeals court and is "therefore 'in a superior position to find
facts and judge their import under § 3353(a)' in each particular case."  *Kimbrough,* 552
U.S. at —, 128 S. Ct. at 574 (*quoting Gall,* 552 U.S. at —, 128 S. Ct. at 597).

---

[5] Pseudoephedrine was added to the list of prohibited chemicals to implement the Domestic Chemical Diversion Control Act of 1993, 21 U.S.C. § 801.  *See* Pub. L. No. 103-200, 107 Stat. 2333 (Dec. 17, 1993). The Commission was directed to increase base offense levels for possession of precursor chemicals in the Comprehensive Methamphetamine Control Act of 1996, 21 U.S.C. § 872a.  *See* Pub. L. No. 104-237, 110 Stat. 3099 (Oct. 3, 1996).  Maximum offense levels for precursor chemical offenses were increased and quantity tables adjusted to correspond to possession of actual methamphetamine instead of those for possession of a mixture or substance containing a detectable amount of methamphetamine by the Methamphetamine Anti-proliferation Act of 2000, 21 U.S.C. § 864.  See Pub. L. No. 106-310, 114 Stat. 1227 (Oct. 17, 2000).  The USA PATRIOT Improvement and Reauthorization Act of 2005 added the offense of smuggling precursor chemicals with a mandatory consecutive sentence of fifteen years, 21 U.S.C. § 865. See Pub. L. No. 109-177, 120 Stat. 192 (Mar. 9, 2006).

The burden is on the government to prove sentencing enhancements. *United States v. Poor Bear,* 359 F.3d 1038, 1041 (8th Cir. 2004). An objection to the findings of a PSR puts the government on notice that it must meet an additional burden at the sentencing hearing. *See United States v. Hammer*, 3 F.3d 266, 272-73 (8th Cir.1993). If a defendant objects to factual allegations in a presentence report, the court must either state that the challenged facts will not be taken into account at sentencing, or it must make a finding on the disputed issue. *See* Fed. R. Crim. P. 32(c)(3)(D). Conversely, the defendant has the burden to show eligibility for reductions in the sentence. *See, e.g., United States v. Hagan,* 412 F.3d 887, 893 (8th Cir. 2005).

In determining a Guidelines sentence, the court has authority to depart for substantial assistance on a government motion. U.S.S.G. § 5K1.1; *United States v. Vasquez,* 433 F.3d 666, 670 (8th Cir. 2006). In evaluating a defendant's assistance in the context of a U.S.S.G. § 5K1.1 motion, relevant factors include: (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered; (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant; (3) the nature and extent of the defendant's assistance; (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and (5) the timeliness of the defendant's assistance. U.S.S.G. § 5K1.1(a). *United States v. Saenz,* 428 F.3d 1159, 1162 (8th Cir. 2005). The extent of a departure or reduction pursuant to § 5K1.1 or § 3553(e) "can be based only on assistance-related considerations." *United States v. Pepper*, 412 F.3d 995, 998 (8th Cir. 2005).

14

It is ultimately the responsibility of the sentencing judge to determine the extent of the departure. *United States v. Haack,* 403 F.3d 997, 1005 (8th Cir. 2005). Moreover, a recommendation for a substantial assistance departure that is not adequately explained by the government is entitled to less weight than a more fully explained recommendation. *Id.* at 1005 n.2. "Under the Sentencing Reform Act and *Booker,* sentencing discretion rests in the final analysis with the sentencing judge, not the prosecution." *United States v. Lazenby,* 439 F.3d 928, 934 (8th Cir. 2006) (noting that the prosecution's evaluation of a defendant's cooperation is critical, but not controlling). A typical defendant generally gets a reduction of fifty percent from the Guidelines range for substantial assistance. *See, e.g.,* The United States Sentencing Commission Special Post-*Booker* Coding Project: Information for All Cases: Data Extraction as of February 1, 2006 (Feb. 14, 2006), *available at* http://www.ussc.gov/bf.htm ("Coding Project Report") (finding that data shows that the "median percent decrease from guideline minimum" for substantial assistance cases in all offense categories is 49.9 percent and the "median percent decrease from guideline minimum" for substantial assistance cases involving drug-trafficking offenses is 45.8 percent); *see also United States v. Christenson,* 403 F.3d 1006, 1009 (8th Cir.), *affirmed en banc by an equally divided court,* 424 F. 3d 852 (8th Cir. 2006) (finding that a 75 percent reduction comported with § 3553(a) sentencing objectives and considerations); *United States v. Pizano,* 403 F.3d 991, 996 (8th Cir. 2005) (finding that a 75 percent reduction comported with § 3553(a) sentencing objectives and considerations); *but cf. United States v. Coyle,* 429 F.3d 1192, 1193-94 (8th Cir. 2005) (while not expressly invoking § 3553(a), finding that a reduction of 73 percent was not appropriate, because to "avoid unwarranted sentencing disparities," defendants offering a greater degree of assistance would receive reductions in the range of 80 to 100

percent); *United States v. Saenz,* 428 F.3d 1159, 1164 (8th Cir. 2005) (finding a 68 percent reduction inappropriate in light of "the overall structure and theory of the guidelines, including the statutory command to reduce unwarranted sentence disparities"); *Haack,* 403 F.3d at 1006 (expressly invoking § 3553(a) factors as a basis for rejecting an 85 percent reduction).

Also, factors that were discouraged or prohibited departure factors under the mandatory Guidelines may be considered in applying the § 3553(a) factors. *United States v. Lazenby*, 439 F.3d at 933. "[P]re-*Booker* departures and post-*Booker* variances are not the same" and there may be "cases that would not justify a departure under the Guidelines but which are appropriate for a variance" as well as "cases in which a combination of a Guidelines departure and other § 3553(a) factors may produce a lower reasonable sentence than a departure alone." *United States v. Robinson,* 454 F.3d 839, 842 (8th Cir. 2006).

### B.   ANALYSIS

### 1.   Initial Guidelines Calculation

Given the government's concession that it could only prove a quantity of drugs that would result in a base offense level of 26, the court finds that Goodman's base offense level is 26. The court will grant the government's motion for a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(b), resulting in an offense level of 23. The court further finds that Goodman has sustained his burden of showing that a reduction for minor role in the offense is applicable.[6]

---

[6]The Eighth Circuit found that "Goodman was not plainly the least culpable of those involved in the offenses. Goodman, 509 F.3d at 877. The Eighth Circuit's conclusion was based on absence of evidence that the items in the truck belonged to Fisher. *Id.* at 876. The court has now been presented with that evidence.

The court credits Goodman's testimony that the items found in his truck belonged to Leslie Fisher. Based on the court's familiarity with Leslie Fisher's extensive history of drug dependence, her previous conviction for conspiracy to distribute methamphetamine, and the prosecution of several of her extended family members for methamphetamine manufacture and distribution, the court finds it logical that Fisher would be in possession of such items. Also, possession of some of the items, including a methamphetamine pipe, miniature scale, and burnt pieces of tin foil are consistent with use of methamphetamine as well as manufacture. The quantities of methamphetamine in Goodman's possession were user quantities. Thus, the presence of drug paraphernalia and precursors in the vehicle does not automatically lead to the conclusion that Goodman was anything more than a minor player in the conspiracy.

The court also credits Goodman's testimony that he has never manufactured methamphetamine. That testimony comports evidence presented at a suppression hearing that Goodman told the law enforcement officers at the time he was arrested that he did not know how much pseudoephedrine was required to manufacture methamphetamine. *See* Filing No. 54, Suppression Hearing Transcript at 32, Testimony of Omaha Police Officer Jeremy Kerwin, Hearing Ex. 1, Officer Kerwin Police Report. The court further credits Goodman's testimony that some of the methamphetamine found on his person belonged to Fisher. Goodman's testimony makes sense in the context of Fisher's history of drug use and addiction. The baggies seized from Goodman contained varying user quantities of methamphetamine and Goodman had a rational explanation for his possession of Leslie's, as well as his own, supply. Further, in view of Fisher's history, it makes sense that he would possess a drug scale to ensure he was sold proper quantities and to ensure that Fisher was not pilfering his supply.

17

The only evidence in the record that Goodman had any involvement in the conspiracy beyond obtaining pseudoephedrine is found in the statements of Randy Evans.  Interestingly, Randy Evans entered into a cooperation plea agreement with the government, yet he was never offered a sentence reduction.  At Goodman's resentencing after the first remand, the government stipulated to a lower drug quantity rather than call Evans to testify to the quantities attributed to Goodman and Fisher in the PSR.[7]  *See* Filing No. 213, Transcript of Hearing at 4.  Filing No. 213, Transcript of Resentencing Proceeding held on August 4, 2006.  At oral argument on appeal to the Eighth Circuit, the Assistant U.S. Attorney argued that Evans was not available to testify at Goodman's resentencing hearing "for the simple reason that he had served his time and he was out on pretrial—supervised release and he chose not to cooperate."  Evans, of course, could have been subpoenaed to testify.  He remains on supervised release at the present time.  As noted, the government has had ample opportunity to secure Evans's testimony, but has declined to do so.[8]  Goodman was indicted for this crime in December 2003.  Randy Evans's credibility was placed at issue early in the action by Goodman's objections to the

---

[7] The prosecutor stated:

We are in agreement of the amount of pseudoephedrine that was found in their possession on the day of their arrest and the government is not attempting to hold them responsible for any additional amounts attributed to them by Randy Evans as we don't believe we have sufficient evidence in that regard at this point.

Filing No. 213, Transcript of Hearing at 4.

[8] The resentencing hearing was originally set for June 30, 2006.  At the hearing, the government moved for a continuance, stating that although it thought the parties had agreed on a sentencing level, it then appeared that the government would need to present evidence on the issue.  At the rescheduled hearing on August 4, 2006, the defendant moved for a continuance so that the issue of a possible "safety-valve" adjustment could be addressed.  Filing No. 213, Transcript of hearing held August 4, 2006.  The hearing was continued until October 6, 2006, at which time Goodman testified  with respect to his possession of the gun.  *Id.*, Filing No. 212, Transcript of Hearing held Oct. 6, 2006.  The government was granted a further continuance in order to present a police officer's testimony  to refute Goodman's "safety-valve" proffer.  Filing No. 212, Transcript at 18.  At the continued hearing on October 19, 2006, the government presented the testimony of Officer Eric White, who testified with respect to the search of Goodman's truck.  Filing No. 214, Transcript of Hearing held Oct. 19, 2006.

quantity determinations in the PSR. See Filing Nos. 110,185, and 192, Objections. Under the circumstances, the court is unable to afford any credence to the government's position that Evans's testimony would show more involvement in the conspiracy by Goodman.

The court finds that Goodman was no more culpable than the other two defendants in this case, both of whom received a minor role adjustments. See Filing No. 14, Fisher Sent. Mem. at 2, 14-15. Accordingly, the court finds Goodman's motion for a minor role adjustment should be granted. The court calculates Goodman's sentencing range, before departures, to be offense level 21 at criminal history category I, resulting in a Guidelines sentencing range of 37 to 46 months.

## 2.    Substantial Assistance Departure

The court will grant the government's notion for a departure for substantial assistance under U.S.S.G. § 5K11. The court finds that the record shows that Goodman has more than satisfied the conditions generally considered in connection with a Guidelines departure under U.S.S.G. § 5K1.1. Goodman has clearly provided significant useful information to law enforcement. The record shows that he and Fisher provided the names of several methamphetamine suppliers to law enforcement officers at the time of their arrest and afterward. Goodman's recent cooperation has resulted in the lengthy incarceration of a large-scale methamphetamine manufacturer and distributor and in the eradication of a dangerous meth lab. In contrast to many defendants appearing in this court, the record shows that Goodman was not motivated to provide the information by his own self-interest in obtaining a shorter sentence. The record shows that Goodman cooperated with Iowa authorities in an effort to protect his family from the influence of a ready availability of drugs. He took a significant risk to his own personal safety and risked damage to his familial relationships by cooperating.

The court finds Goodman should receive a departure of at least fifty percent from the low end of the Guidelines range under U.S.S.G. § 5K1.1. A departure of that magnitude is the national norm and is in line with departures granted to other defendant's providing similar assistance to the government. Accordingly, the court finds Goodman's advisory Guidelines sentence is 18 months.

### 3.     Application of 18 U.S.C. § 3553(a)

Further, the court finds Goodman's motion for a sentence outside the advisory Guidelines range should be granted in consideration of the factors set forth in 18 U.S.C. § 3553(a). A variance from the Guidelines sentence of 18 months to a sentence of 12 months, or time served, will fulfill the objectives of sentencing.

In considering the nature of the offense, the court notes that Goodman's conduct, though undoubtedly criminal, was a step removed from the actual manufacturing of or trafficking in methamphetamine. Procuring precursor chemicals, though a necessary step in manufacture, is less serious than the actual manufacture and sale of methamphetamine. With respect to the circumstances of the crime, obtaining precursor chemicals for methamphetamine manufacturing is, in this court's experience, almost always a function of addiction. No evidence has been adduced showing that Goodman was anything more than more than a small player in any methamphetamine manufacturing enterprise. The government's purported reliance on Randy Evans's elusive testimony to the contrary is disingenuous. Importantly, the government did not file a motion to reduce Evans's sentence, in spite of the fact that Evans entered into a cooperation agreement and its willingness to stipulate to a drug quantity that established a base offense level of 26 belies its assertion that Evans's testimony could establish a far greater quantity. Goodman participated in the crime as a direct result of his entanglement with Leslie

Fisher, who was also a methamphetamine addict.  The court is sadly familiar with the addictive power of methamphetamine and with the difficulty of overcoming that addiction.

In considering the history and characteristics of the defendant, the court notes that Goodman's conviction for this crime is his first offense.  He had virtually no contact with law enforcement until he became involved with Leslie Fisher and addicted to methamphetamine.  At the time Goodman was first sentenced, this court imposed what it considered to be a fair sentence.  The court believed that Goodman needed a period of incarceration in order to reduce the likelihood of his recidivism and to remove him from negative influences.  Goodman completed drug abuse treatment and has complied with a drug-testing regimen while under supervision.  He has reported for and tested clean on all drug tests.  He has met all of the significantly restrictive conditions of supervised release for an extended period of time and while under a significant level of stress due to the prolonged uncertainty with respect to his resentencing.  He has a stable work history and has maintained consistent and continuous employment while under supervision.  He has attempted to improve his situation with further education, has fulfilled his child support obligations, and has now has sole custody of his infant daughter.  The record shows that he has attempted to support his wife's recovery and rehabilitation, up to the point of reporting drug dealers to the authorities in order to keep them from his wife.  These facts show that the court's initial sentence of 12 months has been sufficient to enable Goodman to recover from his addiction and to deter him from committing other crimes.

Goodman's case is one of the exceedingly rare cases in which the court can envision a positive result.  Goodman has shown the court that he can be a productive member of society and he is, in fact, an asset to his community.  His family, his community, and other communities in rural Nebraska and Iowa will benefit by his example.

21

Under these unusual circumstances, the court finds there is no benefit to the imposition of any additional prison time.

In light of Goodman's demonstrated ongoing recovery, maintenance of employment, payment of child-support obligations, and involvement in the care and custody of his infant daughter, there appears to be little need to protect the public from any future crimes. Nevertheless, the public's interest in being free from any future crimes will be protected by the court's ability to incarcerate him should he violate the conditions of supervised release. Also, recently enacted restrictions on the purchase of pseudoephedrine and resulting changes in the methamphetamine manufacturing climate will further reduce the possibility of future crimes of this nature. Further imprisonment, however, would not serve to protect society because a return to prison would interfere with Goodman's recovery. Also, further imprisonment would cause hardship on Goodman's infant daughter since Goodman is now the custodial parent as a result of his wife's relapse.

This sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. The court notes that defendant has already served a significant amount of prison time and has relinquished significant liberties during his lengthy period of supervised release. The sentence is just, given that the benefit to society of a sentence of further imprisonment is outweighed by the harmful effect it would have on Goodman's family situation, especially to his infant daughter, who now relies on him for all of her needs, as well as to the other children who rely on him for support. The extended period of strictly-conditioned supervised release, together with the term of incarceration that Goodman has already served, will protect society and will deter others from such conduct.

22

The court also has considered the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the United States Sentencing Guidelines and policy statements.  As discussed above, the court has calculated Goodman's Guidelines sentence and has treated that sentence as the starting point and initial benchmark in determining his sentence.  A variance is appropriate in view of the fact that the Guidelines at issue were developed pursuant to statutory directive and not based on empirical evidence.

Importantly, the court has considered the need to avoid sentencing disparity between defendants who have committed similar crimes.  As discussed above, the sentence imposed on Goodman eliminates sentencing disparity between the defendants in this case, as well as between defendants charged with crimes similar to one that the government's evidence would have supported in this case.  Based on this court's familiarity with this case and with Leslie Fisher's prior conviction, it is reasonable to conclude that Leslie Fisher was more involved in the methamphetamine conspiracy than Goodman.  Fisher's extended family are extensively involved in the methamphetamine distribution business in Iowa.

In determining the sentence the court is also mindful of the changes in the sentencing landscape while this case has been pending and the effect of the delayed resolution of the case on Goodman.  The constitutionality of the Guidelines was in question at the time of Goodman's first sentencing, and they were rendered advisory shortly thereafter.  Since Goodman's second sentencing, the court has had the benefit of Supreme Court and Eighth Circuit cases further refining and expanding on the changed sentencing environment.  The changes in the law have created considerable uncertainty

23

and stress for Goodman.  During the time that this action wound its way through the judicial system, Goodman fully served his sentence, was released, and returned to society as a functioning and productive citizen.  He has done everything this court has asked of him and it would be unjust to require him to endure further imprisonment.

Accordingly, the court finds a sentence of time served, together with a period of supervised release of three years on Count I and three years on Count II, to be served concurrently and to commence October 19, 2006, will adequately address the sentencing objectives outlined in Section 3553.  An amended judgment and commitment and statement of reasons in accordance with this sentencing memorandum will issue this date.

DATED this 14th day of April, 2008.

BY THE COURT:


s/ Joseph F. Bataillon
Chief U.S. District Court Judge